**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARY IZZO, ) | |
| ) | Case No. 2:15-cv-01142-JAD-NJK |
| Plaintiff(s), ) | |
| ) | ORDER |
| vs. ) | |
| ) | |
| WAL-MART STORES, INC., ) | |
| ) | (Docket Nos. 18,19, 23) |
| Defendant(s). ) | |
| ) | |

Pending before the Court are Plaintiff's motion to compel, Defendant's motion for protective order, and Defendant's motion for sanctions. Docket Nos. 18, 19, 23. Defendant filed a response to Plaintiff's motion to compel, and Plaintiff submitted a reply. Docket Nos. 22, 32. Plaintiff filed a response to Defendant's motion for protective order, and Defendant submitted a reply. Docket Nos. 21, 30. Plaintiff filed a response to Defendant's motion for sanctions. Docket No. 33. No reply was filed. *See* Docket. The Court finds that these motions are appropriately resolved without oral argument. *See* Local Rule 78-2.

**FACTUAL ALLEGATIONS**

This case arises out of a slip and fall accident that allegedly occurred on May 18, 2013, in one of Defendant's stores. Docket No. 22 at 3. Plaintiff alleges that, as she was exiting the store, she slipped and fell on a clear liquid. Docket No. 21 at 2. Defendant claims a customer spilled the liquid on the floor. Docket No. 22 at 4. Plaintiff, however, suspects that an ongoing leak from the ceiling cause the pooling of liquid on the floor. Docket No. 32 at 13.

On November 2, 2015, Plaintiff served Defendant with a Federal Rule of Civil Procedure 30(b)(6)[1] notice for a deposition to take place on November 19, 2015. Docket No. 22 at 4. That notice contained over 100 deposition topics and sub-topics. *See* Docket No. 22-2 at 2-17. Defendant objected to over sixty of them. Docket No. 19 at 3-6 (providing disputed topics). The parties met and conferred in an effort to avoid judicial intervention, but failed to bridge the gap between them. *Id*. at 7. On November 18, 2015, Plaintiff filed a motion to compel and Defendant filed a motion for protective order. Docket Nos. 18, 19. Defendant's motion for sanctions soon followed. Docket No. 23. These are the motions presently before the Court.

## **STANDARDS**

Rule 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter" if the information is both "relevant to any party's claim or defense" and "proportional to the needs of the case." Fed.R.Civ.P. 26(b)(1). Discovery is not limited to admissible information. *Id*. When determining whether discovery is "proportional to the needs of the case," the court examines the information requested in light of six factors: "[1] the importance of the issues at stake in action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

Rule 26(b)(2)(C) further limits discovery. It requires the Court to limit the frequency or extent of discovery if it determines that the discovery sought is unreasonably cumulative or duplicative, the party seeking discovery has had ample opportunity to obtain the information by discovery in the action, or the proposed discovery is outside the scope of Rule 26(b)(1). "In deciding whether to restrict discovery under Rule 26(b)(2)(C), the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Roberts v. Clark Cty. Sch. Dist*., — F.R.D. —, 2016 WL 123320, at *5 (D. Nev. Jan. 11, 2016). Thus, "courts have the duty to pare down overbroad discovery requests under Rule 26(b)(2)." *Id*. (citations and quotations

---

[1] Unless otherwise specified, references to "Rules" are to the Federal Rules of Civil Procedure.

omitted).

"Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford–El v. Britton*, 523 U.S. 574, 599 (1998). This is because active involvement of federal judges is necessary "to prevent discovery from becoming a war of attrition or . . . a device to coerce a party, whether financially weak or affluent." *Roberts*, 2016 WL 123320, at *6.

## I. Motion to Compel

If a party resists discovery, the requesting party may file a motion to compel. *See* Fed.R.Civ.P. 37(a)(1). The motion must include a threshold showing that the requested information falls within the scope of discovery under Rule 26. *Sanhueza v. Lincoln Technical Instiute, Inc.*, 2014 WL 6485797, at *2 (D. Nev. Nov. 18, 2014) (citing *Hofer v. Mack Trucks, Inc*., 981 F.2d 377, 380 (8th Cir. 1992)). "The party opposing discovery has the burden of showing that the discovery is irrelevant, overly broad, or unduly burdensome." *Fosbre v. Las Vegas Sands Corp*., 2016 WL 54202, at *4 (D. Nev. Jan. 5, 2016) (citing *Graham v. Casey's General Stores*, 206 F.R.D. 251, 253–4 (S.D. Ind. 2000)). To meet this burden, the objecting party must specifically detail the reasons why each request is objectionable. *Id.* (citations omitted).

## II. Motion for Protective Order

Rule 26(c)(1) permits a party from whom discovery is sought to move for a protective order. "The court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed.R.Civ.P. 26(c)(1). The burden of persuasion under Rule 26(c) is on the party seeking the protective order. *Barket v. Clark*, 2013 WL 647507, at *2 (D. Nev. Feb. 21, 2013). Rule 26(c) requires more than "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Id*. (citing *Beckman Indus., Inc., v. Int'l. Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)).

## III. Rule 30(b)(6) Depositions

Depositions under Rule 30(b)(6) differ in significant respects from the normal deposition. Rule 30(b)(6) permits a party to "name as the deponent a public or private corporation." Fed.R.Civ.P. 30(b)(6). The named corporation must then designate and prepare a witness to testify on the

3

1  corporation's behalf. *Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534, 538 (D.
2  Nev. 2008). "Rule 30(b)(6) imposes burdens on both the discovering party and the designating party."
3  *Id*. Generally, "the party noticing a Rule 30(b)(6) deposition must take care to designate, with
4  painstaking specificity, the particular subject areas that are to be covered." *U.S. E.E.O.C v. Bank of*
5  *Am.*, 2014 WL 7240134, at *5 (D. Nev. Dec. 18, 2014). "In producing representatives for a Rule
6  30(b)(6) deposition, a corporation must prepare them to give complete, knowledgeable and binding
7  answers." *Nevada Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1418 (D. Nev. 1995) (internal
8  quotations and citation omitted).

## ANALYSIS

10 The pending motions relate to the same Rule 30(b)(6) deposition topics. The Court will address
11 each topic in turn below.

12 **I.    Overall Maintenance**

13 This topic seeks testimony as to the "overall maintenance in Walmart #2884 for the safety of its
14 patrons, guests and employees, during the one year period of time prior to the incident, through the
15 present time." Docket No. 19-2 at 3. The topic makes clear that it "includes, without limitation" twelve
16 illustrative sub-topics that relate to particular types of maintenance. *Id*. at 3-5.

17 Defendant argues that the topic is overbroad and unduly burdensome in temporal and spatial
18 terms. Docket No. 22 at 7-8. It highlights that this category calls for testimony on a "myriad of
19 maintenance procedures from 2012 through November 2015," and argues that policies in effect a year
20 before the accident and two years after the accident are not relevant to the current action. *Id*. at 8-9.
21 Plaintiff counters that, because this topic is "clearly relevant to the Defendant's knowledge, notice and
22 the issue of feasibility[,]" it "is fair game for inquiry." Docket No. 18 at 5.

23 The Court finds that Plaintiff failed to justify the temporal scope of this request. Since
24 Plaintiff's accident allegedly occurred on May 18, 2013, the time period encompassed by this topic
25 extends from May 18, 2012, to November 19, 2015, which is over three and one-half years. Although
26 Plaintiff requests years of information, she spends little time arguing for it. Instead, Plaintiff's argument
27 retreats from the three and one-half year period and addresses "the one year period prior" to her

accident. Docket No. 21 at 14-15. She argues that Defendant's "maintenance policies and procedures that were in effect during this period" are relevant to whether Defendant maintained "the premises in a reasonably safe condition at the time she fell." *Id*. Plaintiff further contends that "the evidentiary value of the policies and procedures that were in place during the one year period prior is extremely high" because documents previous produced refer to "'Trend Analysis,' 'Strategic Maintenance Plans,' and 'Quarterly Safety Action Plans.'" *Id*. The Court is unpersuaded. While Plaintiff argues persuasively that the so-called 'Trend Analysis,' 'Strategic Maintenance Plans,' and 'Quarterly Safety Action Plans,' in effect at the time of accident are relevant, the relevancy of the policies and procedures in effect at the time of accident is not disputed. Defendant has already agreed to provide a deponent to testify "as to the maintenance policies and procedures pertaining to the floor in the vestibule where the incident occurred and in effect on the date of the accident." Docket No. 22 at 9. The Court finds that this resolution is reasonable and appropriate.

Plaintiff also fails to justify the broad subject matter of the request. In this case, Plaintiff slipped and fell in the vestibule area of the store. Docket No. 22 at 3. Plaintiff offers no showing as to how the maintenance of different areas of the store are relevant to her accident. Accordingly, the Court finds Plaintiff's topic is overbroad as written.

Therefore, Defendant's motion for protective order on this issue is granted and Plaintiff's motion for protective order is denied. The Court orders Defendant to produce a deponent to testify as to the maintenance policies and procedures pertaining to the floor in the area of the store where the accident occurred that were in effect at the time of the accident.

**II.   Safety Training**

This category of topics seeks testimony regarding Defendant's safety training programs from one year before the accident, May 18, 2012, through the present. Docket No. 19-2 at 5-6. It covers seventeen topics, ranging from Defendant's monthly "OHSA Logs during the above periods of time" to all employee safety manuals, training programs, and training manuals in effect during the above periods of time. *Id.*

Plaintiff asserts that "[e]mployee awareness, as well as training and safety issues, are critical to

[Plaintiff's] case[.]" Docket No. 21 at 16. Plaintiff argues that "there should be no problem in having a designee look at the . . . documents and testify on [Defendant's] behalf" because all of Defendant's "employees are expected to know and understand these materials." *Id.* Defendant counters that this category's temporal scope and wide-ranging subject matter makes it "patently harassing." Docket No. 22 at 10. Defendant argues that only the policies in effect at the time of the accident go to the reasonableness of Defendant's precautions. *Id.* Accordingly, Defendant offers "to produce a deponent to testify about safety policies and procedures relevant to preventing slip and fall hazards in effect on the date of the incident, as well as the training employees receive regarding those policies and procedures." Docket No. 19 at 9.

At the outset, the Court notes that Plaintiff offers no explanation as to why testimony on Defendant's "monthly OSHA logs during the above period of time" is discoverable. *See* Docket Nos. 18 at 5-6 (motion to compel); 21 at 16 (response to motion for protective order), 32 at 12-13 (reply). This defect is glaring because Defendant specifically lists this topic as an example of how Plaintiff's topics are "solely designed to harass [it], not to cover discoverable information in this slip and fall matter." Docket No. 22 at 10 (emphasis in original omitted).

Further, since Defendant has offered to produce a designee to testify on some of these topics, the disagreement between the parties is narrower than Plaintiff's briefing acknowledges. Plaintiff simply fails to adequately address why Defendant must produce a deponent to testify about training regarding policies that were not effect at the time of the accident. Her closest argument on this point is that, because Defendant's policies regarding slip and falls "are constantly evolving[,]" she is entitled to this discovery. Docket No. 21 at 16. However, she fails to explain how training regarding "constantly evolving" procedures that were not in effect at the time of the accident will lead to admissible evidence. The Court also notes that Plaintiff does not explain why she requires information regarding non-safety training information, safety training information not related to slips and falls, or safety training not related to the incident area.

Accordingly, Defendant's motion for protective order is granted as to this topic and Plaintiff's motion to compel is denied. However, the Court orders Defendant to produce a deponent to testify

1  about safety policies and procedures relevant to preventing slip and fall hazards in effect on the date of
2  the incident, as well as the training employees receive regarding those policies and procedures.

3  **III.    Prior Claims and Incidents**

4  This category of topics seeks testimony regarding Incident Reporting System entries[2] as well as
5  the "facts and circumstances surrounding any other slip and fall incident by guests/patrons of Walmart
6  #2884 during the three year period of time prior to the incident, through present time, including without
7  limitation, the general area where Plaintiff fell." Docket No. 19-2 at 6-7.

8  Defendant first objects to this topic on the grounds that it is not "reasonably calculated to lead
9  to admissible evidence" because prior claims evidence is inadmissible to show notice of a temporary
10  hazard under Nevada law. Docket No. 22 at 14. Defendant's argument relies on *Eldorado Club, Inv.*
11  *v. Graff*, 377 P.2d 174, 176 (Nev. 1962) in which the Nevada Supreme Court held that "where a slip and
12  fall is caused by the temporary presence of debris or foreign substance on a surface, which is not shown
13  to be continuing, it is error to receive 'notice evidence' [in the form of prior incidents] for the purpose
14  of establishing the defendant's duty." *Id.* at 14.

15  Defendant also argues that the potential value of other claims evidence is outweighed by the
16  burden on Defendant to gather the information and the privacy rights of third parties. Docket No. 30
17  at 13-15. Defendant claims that the topic would require it to: (1) search for all documents and evidence
18  associated with each claim; (2) review voluminous documentation; (3) conduct a privilege review on
19  each document and note its privilege claims in a privilege log; and (4) produce a corporate designee who
20  studied this vast amount of documents in order to competently testify. Docket No. 19 at 18-19.
21  Defendant represents that preparing testimony on this topic would require "hundreds of hours of
22  personnel time" and "would require weeks of work, if not months." Docket No. 30 at 13. Accordingly,
23  Defendant has provided a particularized showing of undue burden supported by "specific examples"
24  and "articulated reasoning." *Barket*, 2013 WL 647507, at *2 (D. Nev. Feb. 21, 2013). In considering
25  the totality of the circumstances, the Court concludes that the value of the material sought is outweighed

---

27  [2] Although Plaintiff's Rule 30(b)(6) notice places this topic in the prior category, the Court will
28  discuss it here because the topics raise identical issues.

by Defendant's burden of providing it. *Roberts*, 2016 WL 123320, at *5 (D. Nev. Jan. 11, 2016).

Defendant provided Plaintiff with a list of prior reported slips and falls. Docket No. 30 at 11. The Court finds that Plaintiff, therefore, already has the information she seeks. Her request is overbroad, unduly burdensome, and not relevant to the claims she asserts. Accordingly, the Court grants Defendant's motion for protective order and denies Plaintiff's motion to compel as to this issue.

### IV. Safety Meetings

The deposition notice for this topic requires Defendant's designee to testify regarding:

2. All safety, association, and/or board of director meetings during the above periods of time, during which safety matters were discussed, including without limitation:

a. Ongoing or other problems that were being experienced in Walmart #2884, including water leaks, liquid spills and related occurrences; and

b. Any other claims that were made, by guests, patrons, and/or employees who had slipped, tripped, and/or fallen in Walmart #2884 during the above periods of time.

Docket No. 19-2 at 7. Defendant argues that this request is overbroad because "it covers all aspects of every meeting during which safety matters were discussed." Docket No. 19 at 10. Plaintiff responds that "this is an appropriate area of inquiry" because Defendant's "documents confirm that safety meetings are regularly held[.]" Docket No. 21 at 19. Plaintiff also lists information that she hopes to uncover using this category. Docket No. 21 at 18-19. Defendant responds that Plaintiff has "failed to articulate a single justification for such an expansive topic of inquiry" and "merely points to the fact that [Defendant] holds regular safety meetings[.]" Docket No. 19 at 10. The Court agrees. Plaintiff fails to grapple with Defendant's overbroadness argument, and, instead, offers the Court conclusory assurances that this information is discoverable. *See* Docket No. 18 at 7-8; 21 at 18-19.

Accordingly, Defendant's motion for protective order is granted as to this topic and Plaintiff's motion to compel is denied. The Court finds that testimony within the above-referenced topic concerning "those policies and procedures in effect on the date of the reported incident and at the store in question" subsumes any relevant inquiry within this topic.

### V. Employee Personnel Files

This topic requests testimony on:

3. The personnel files for the employees who were present after the incident took place

> and/or who spoke with the Plaintiff, as seen in the surveillance video footage that has been produced in this case.

Docket No. 19-2 at 8.

Defendant objects to this request on relevancy and privacy grounds. Docket No. 22 at 19. It argues that the mere fact that Defendant's employee spoke with Plaintiff after the incident or was present after the incident does not justify an inspection into that employee's personnel file. Docket No. 30 at 17. Defendant also points out that it has already produced the Safety Team Notes for five weeks preceding Plaintiff's incident and each employee's written statements regarding the incident. *Id.* (describing safety notes); *see also* Docket No. 19 at 11 (describing the production of written statements). Plaintiff also argues that testimony regarding these employee files is relevant to determine "whether [Defendant's] employees working in the incident area were doing what they were supposed to do that day." Docket No. 21 at 19.

In contrast to the wide scope of the disputed topic, the employee's entire file, Plaintiff offers only one narrow area of inquiry that is relevant to the subject matter of the dispute. Again, Plaintiff does not acknowledge that the topic as written encompasses vast amounts of irrelevant information. The Court finds this topic is overbroad. The Court will not permit Plaintiff to inquire about personnel files and will solely permit her to inquire into whether the employees who were present after the incident took place and/or who spoke with the Plaintiff as seen in the surveillance video footage were disciplined as a result of their conduct relating to Plaintiff's accident. If the response is no, Plaintiff may not inquire further. If the response is yes, Plaintiff may inquire solely as to the specific reason for the discipline and specific discipline given.

Therefore, as to this topic, Defendant's motion for protective order is granted in part and denied in part, and Plaintiff's motion is granted in part and denied in part.

## VI.   Third-Party Contracts

The next topic in dispute seeks testimony on:

> 1. Each and every contract, agreement, and/or other document by, between and/or among Walmart, and any third parties which were in effect during the three years prior to the incident through the present time, for Walmart #2884[.]

Docket No. 19-2 at 15. The topic proceeds to list sixteen examples of types of contracts ranging from

9

"[r]ental and/or lease agreements" to "the agreement between and/or among [Defendant] in which the liquid/food would be brought in and removed." *Id*. at 15-16. The topic clarifies that the topic is "not limited to" these examples. *Id*. at 15.

The Court finds that this topic is overbroad. Defendant argues that the topic "would require Defendant to provide testimony regarding hundreds of third-party contracts it entered into at the store over a five-year period" regardless of whether those contracts have "any nexus to the facts of the case." Docket No. 30 at 21. Plaintiff responds that, because Defendant "has not explained how the clear liquid got on the floor," she is entitled to conduct discovery into any systems, such as the "[l]arge overhead HVAC, air conditioning, fire sprinkler and piping systems," that "could have produced the hazard." Docket No. 21 at 20. However, Plaintiff's argument fails because it does not address, much less establish, that testimony regarding the terms of third-party contracts will yield evidence relevant to her claim.

Accordingly, as to this topic, the Court grants Defendant's motion for protective order and denies Plaintiff's motion to compel.

**VII. Legal Ownership and Allocation of Responsibilities**

This topic seeks testimony regarding the "legal ownership of where the incident occurred and the business relationship by and between [Defendant] and the owner of the subject property[,]" as well as the "allocation of responsibilities between the owner and [Defendant] to maintain the property in a reasonably safe condition[.]" Docket No 19-2 at 16. Plaintiff argues that, "since [Defendant] has already denied being the owner of the property where [she] was injured," she is entitled to inquire into these topics. Docket No. 18 at 9.

The Court finds these topics are not discoverable. "With respect to slip-and-fall cases, a proprietor owes invited guests a duty to keep the premises in a reasonably safe condition for use[.]" *Shakespear v. Wal-Mart Stores, Inc.*, 2015 WL 5664302, at *1 (D. Nev. Sept. 24, 2015) (citing *Asmussen v. New Golden Hotel Co.*, 392 P.2d 49, 49 (Nev.1964)). Defendant does not dispute that it is the proprietor of the premises and that the incident occurred within its premises. Therefore, these topics are not relevant to Plaintiff's claims. Accordingly, as to these topics, the Court denies Plaintiff's

10

motion to compel.

## VIII. Defendant's Document Production

This topic relates to testimony on all of Plaintiff's discovery and document production. Plaintiff voluntarily withdrew this request. Docket No. 18 at 9. Accordingly, the Court denies as both moot Plaintiff's motion to compel and Defendant's motion for protective order on this issue.

## **REQUESTS FOR SANCTIONS**

### I. Plaintiff's Request for Sanctions

Plaintiff requests sanctions pursuant to Rule 37(d) for what she characterizes was "Defendant's unilateral decision not to appear for its own properly-noticed and timely deposition." Docket No. 18 at 10. Rule 37 "governs discovery disputes and sanctions stemming therefrom." *Mkhitaryan v. U.S. Bank, N.A.*, 2012 WL 6004521, at *1 (D. Nev. Nov. 29, 2012). Rule 37(d)(1) permits a court to sanction a party if its Rule 30(b)(6) designee fails, "after being served with proper notice, to appear for that person's deposition." Rule 37(d)(1)(A)(i). The fact that a discovery request is objectionable is no excuse for a lack of response, unless "the party failing to act has a pending motion for a protective order[.]" Fed.R.Civ.P. 37(d)(2). "The court may punish a party for failing to appear for deposition even if the party has a motion for a protective order pending at the appointed time." *Hiramanek v. Clark*, 2016 WL 217255, at *4 n.34 (N.D. Cal. Jan. 19, 2016) (citing *Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964)). "Otherwise, . . . a proposed deponent, by merely filing motions . . ., could evade giving his deposition indefinitely." *Id.* at 269. Such an approach would be "'an intolerable clog upon the discovery process.'" *Scott v. Palmer*, 2014 WL 6685813, at *3 (E.D. Cal. Nov. 26, 2014) (citing *Pioche*). However, in such circumstances, "the court is not required to impose any penalty." *Hiramanek*, 2016 WL 217255, at *4 n. 34; *see also* Fed.R.Civ.P. 37(d)(2) (providing that a pending protective order is a necessary, not sufficient, condition for the failure described in Rule 37(d)(1)(A) to be excused).

Here, although Defendant filed its motion for protective order on the eve of the noticed deposition, Defendant's conduct does not warrant sanctions. First, at the time of deposition, Defendant's motion for protective order was pending. *See* Docket. Thus, pursuant to Rule 37(d)(2),

1  Defendant's nonappearance was excusable. Second, in the weeks leading up to the deposition, the
2  parties engaged in extensive meet and confer efforts. Docket No. 19 at 7. They conferred
3  telephonically multiple times and exchanged detailed letters. *See* Docket No. 19-2 at 20-53. Ultimately,
4  during a November 16, 2015, phone call, the parties realized that they had reached an impasse. Docket
5  No. 19 at 7. These efforts to avoid judicial intervention necessarily delayed both Plaintiff's motion to
6  compel and Defendant's motion for protective order. Accordingly, the reasons for concern addressed
7  in *Pioche Mines* are not present here, and the Court denies Plaintiff's request for sanctions.

## II.    Defendant's Motion for Sanctions

Defendant requests sanctions pursuant to Rule 37(a)(5)(B).[3] Docket No. 23 at 24. Rule 37(a)(5)(B) provides that "[i]f the motion [to compel] is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed.R.Civ.P. 37(a)(5)(B). However, sanctions may not issue "if the motion was substantially justified or other circumstances make an award of expenses unjust." *Id*. Discovery conduct is "substantially justified if it is a response to a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Plaintiff's response appears to argue that her motion was substantially justified. *See* Docket No. 33. While the Court denied the lion's share of Plaintiff's motion to compel, it did grant a small portion of it. Therefore, Rule 37(a)(5)(C), not Rule 37(a)(5)(B), applies and sanctions are discretionary. *Switch Commc'ns Grp. LLC v. Ballard,* 2011 WL 5041231, at *1 (D. Nev. Oct. 24, 2011) (citing Fed.R.Civ. 37(a)(5)(C)). Though a close call, the Court, in its discretion, finds that sanctions are not warranted here.

//
//

---

[3] Defendant incorrectly cites to Rule 37(b)(5)(B). Docket No. 23 at 24. Since the motion quotes Rule 37(a)(5)(B), which applies where a motion to compel is denied, the Court construes its request accordingly.

12

## CONCLUSION

For the reasons more fully addressed above, the Court hereby **GRANTS** in part and **DENIES** in part Defendant's motion for protective order and Plaintiff's motion to compel. Both parties' requests for sanctions are **DENIED**.

IT IS SO ORDERED.

DATED: February 2, 2016

_____
NANCY J. KOPPE
United States Magistrate Judge